FILED

2016 Apr-29  AM 09:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **PATRICIA ANN OWSLEY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.: 1:15-cv-764-JHH** |
| } | |
| **CAROLYN W. COLVIN, Acting** } | |
| **Commissioner of Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff, Patricia Ann Owsley, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

## I.    Proceedings Below

Plaintiff filed her application for DIB protectively on April 25, 2012, alleging a disability onset date of February 1, 2009. (R. 49, 112-18). Plaintiff's application was denied initially on June 15, 2012, (R. 67-72), and thereafter, Plaintiff timely filed

a request for a hearing. (R.73-74). Plaintiff's request was granted, and a video hearing was held before an Administrative Law Judge ("ALJ") on September 11, 2013, with Plaintiff appearing in Anniston, Alabama, and the ALJ presiding over the video hearing from Birmingham, Alabama. (R. 9-36). Plaintiff and Vocational Expert ("VE") Donald Parsons provided testimony at the hearing. (R. 9-36). Plaintiff was represented by an attorney at the video hearing. (R. 9-36).

In the December 12, 2013 decision, the ALJ determined that Plaintiff was not eligible for DIB because she was not under a "disability," as defined by the Act, at any time before the date of decision. (R. 62). Thereafter, Plaintiff requested review of the ALJ decision by the Appeals Council. (R. 1-3). After the Appeals Council denied Plaintiff's request for review on March 3, 2015, (R. 41-3), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the ALJ decision, Plaintiff was fifty-four years old, (R. 53, 112), with a ninth-grade education and completion of welding classes. (R. 53-54, 151-52). Plaintiff reported that she had not worked since May 1, 2005, when she stopped working due to the closing of a business that she and her husband owned. (R. 15-16, 51, 151-52). Plaintiff claims that since her alleged onset date of February 1, 2009,

she has been unable to work due to back, hip, neck, and leg pain, diabetes, and depression. (R. 151).

At the September 2013 hearing, Plaintiff reported that although she stopped working in 2005, she did not have many problems with pain until about 2008. (R.26-27). Plaintiff testified about her complaints of pain and physical limitations for the years 2009 and 2010.[1] Her primary problems were chronic pain in her back, hip, leg and feet. (R. 54). During that time period, she reported that she could hardly get around and had to lie down half of the day to get relief from her pain. (R.18). She went to a chiropractor who said he could not do anything, so she was referred to an orthopedic doctor for back and hip pain, who referred her to a surgeon. (R. 54). Plaintiff had back surgery, which improved her back pain, but she testified that she immediately starting hurting in her legs, and that her legs were sore to touch and she could hardly touch them to her clothes. (R.19, 54).

Plaintiff stated that during the relevant time period she could be up for about an one hour, but then needed to lie down about 45 minutes to an hour to get relief from her pain. (R.20). According to the Plaintiff, she needed to lie down about four to five hours during the day. (R.20). She stated that she had problems sitting due to

---

[1] Plaintiff's testimony was limited to that time period because she was eligible for DIB only through December 31, 2010.

her hip and back, and she had balance problems due to foot pain.  (R. 54).  Her husband did all the shopping.  (R. 54).  She testified that she had trouble sleeping and had to get up five to six times per night to use the restroom.  (R. 54).  Her son played sports and she attended a few of his games, but most of the time she had to leave and return home.  (R. 54).  Plaintiff stated that lying down was the most comfortable position.  (R. 54).

The Plaintiff also explained she was also had problems controlling her blood sugars in 2009 and 2010. (R. 21).  She testified she had difficulty taking her insulin and her sugar would run high all of the time which caused her to be tired all of the time.  (R.21, 22).  Other symptoms were thirstiness and shakiness.  (R. 54).

## II.   ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis.  *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  The claimant's residual

functional capacity consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

In her December 12, 2013 decision, the ALJ found that Plaintiff last met the insured status requirement of the Social Security Act on December 31, 2010 and determined that Plaintiff had not engaged in substantial gainful activity since her

alleged onset of disability on February 1, 2009, through her date last insured of December 31, 2010. (R. 51 at Findings No. 1 & 2). She also found that, during the relevant time period, Plaintiff had the following medically determinable impairments, which she deemed to be "severe": diabetes mellitus, peripheral neuropathy, hypertension, degenerative disc disease, and degenerative joint disease. (R. 51-52 at Finding No. 3). Nevertheless, she determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 52-53 at Finding No. 4). According to the ALJ, Plaintiff's subjective complaints concerning her alleged impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record. (R. 58-60 at Finding 5).

Thus, the ALJ found that Plaintiff retained the physical residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except as follows: she could occasionally climb ramps and stairs, but never ropes, ladders of scaffolds; she could frequently balance, stoop, and kneel; she could occasionally crouch, and never crawl; she could constantly reach, handle, finger and feel. (R. 53-60 at Finding 5). Further, she could never work in environments with concentrated exposure to extreme cold or wetness, or in an environment with

exposure to hazardous conditions such as unprotected heights or moving machinery. (R. 53-60 at Finding 5).

The ALJ sought testimony from VE Donald Parsons at the administrative hearing, and she posed several hypothetical questions to Parsons regarding different scenarios of functional capacity. (R. 29-35). With Parson's help, the ALJ determined that Plaintiff is unable to perform her past relevant work, (R. 60 at Finding No. 6), but she concluded that Plaintiff could perform other sedentary occupations which exist in significant numbers in the national economy, including occupations such as appointment clerk (Dictionary of Occupational Titles 7 ("DOT") § 237.367- 010), of which approximately 1,400 such jobs exist in Alabama and 120,000 nationwide, industrial order clerk, (DOT § 221.367-022), of which 250 such jobs exist in Alabama and 20,000 nationwide, and general receptionist (DOT § 237.367-038) of which approximately 1,200 such jobs exist in Alabama and 100,000 nationwide. (R. 61-62 at Finding No. 10). Accordingly, the ALJ found that Plaintiff was not under a "disability," as defined by the Act, at any time from February 1, 2009, through December 31, 2010. (R. 62 at Finding No. 11).

## III.   Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed,

or in the alternative, remanded for further consideration. (Doc. # 11 at 13). Plaintiff's arguments focus on the ALJ's RFC finding, which she contends was not supported by substantial evidence and/or was derived by the application of improper legal standards. Specifically, Plaintiff contends that the RFC finding: (1) improperly discredits her subjective complaints under the Eleventh Circuit "pain standard;" (Doc. # 11 at 3-8) and (2) failed to properly articulate good cause for according less weight to the opinion of her treating physician. (Doc. # 11 at 8-11).

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383© mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial

8

evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's request for remand and/or reversal.  As noted earlier, Plaintiff's arguments centers on the ALJ's RFC calculation (through the application of the pain standard and consideration of Plaintiff's treating physician), which the court finds to be supported by substantial evidence and the application of proper legal standards.  The court has carefully considered each of Plaintiff's argument, the analysis of which follows.

**A.    The ALJ Properly Discredited Plaintiff's Pain Complaints Pursuant to the Pain Standard**

Plaintiff first challenges the ALJ's assessment of her subjective complaints because she contends the ALJ "erred by finding the objective medical evidence does not support the severity of symptoms alleged by the Plaintiff nor were they of the severity that they could have reasonably been expected to give rise to her alleged symptoms." (Doc. # 11 at 4).  Specifically, Plaintiff contends that the ALJ erred in her analysis of the following: (1) Plaintiff's remote alleged onset date; (2) Plaintiff's work history; and (3) the medical evidence of record.  (*See id.* at 5-8).

It is axiomatic that the Act and its related regulations provide that a claimant's statements about pain or other symptoms *will not alone* establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929.  Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such

10

severity that it can reasonably be expected to cause the alleged pain. *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the ALJ fails to credit a claimant's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses. Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the

11

ALJ properly applied the pain standard. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In this case, the ALJ's analysis comports with the requirements of the pain standard for evaluating Plaintiff's subjective complaints, indicating that proper legal standards were applied in her analysis and that she considered Plaintiff's symptoms and subjective complaints in light of the steps outlined above. The ALJ reached her conclusions after a thorough review of the opinions of Plaintiff's treating and examining sources, which support her ultimate determination. *See* C.F.R. § 404.1529(c)(2).

Although the ALJ determined that the objective evidence establishes medically determinable impairments that could produce Plaintiff's alleged symptoms, (R. 55), she nevertheless found that Plaintiff's statements about the intensity, persistence and limiting effects of those impairments are not entirely credible. (R. 58). In so finding, the ALJ discussed Plaintiff's remote alleged onset date, lack of work history and all of Plaintiff's medical records. None of these considerations were in error.

First, the court agrees with the ALJ that Plaintiff's "remote alleged onset date" undermines her allegations of disabling limitations beginning February 1, 2009, especially considering that Plaintiff filed a previous application on February 29, 2012, where she alleged she was disabled beginning February 1, 2011, the date she injured

her ankle.  (R. 54-55).  That application was denied because Plaintiff was only insured for DIB purposes through December 31, 2010.  (R. 55).  It was then that Plaintiff filed a new application for DIB, the one here, and alleged a new onset date of February 1, 2011.  (R. 55).  The ALJ correctly found that this change in the onset date undermines her allegations of disabling limitations from February 1, 2009 though December 31, 2010.

Second, the court agrees with the ALJ that Plaintiff's work history undermines her credibility as it relates to her alleged disabling conditions.   It is undisputed that Plaintiff has not worked since May 1, 2005, when her family business closed.  (R. 55, 151).  Plaintiff testified that she has not even tried to work since that date, including the almost four years before her alleged onset date.  (R. 15-16, 55).  Other courts have noted that "[a] lack of work history may indicate a lack of motivation to work rather than a lack of ability." *Persall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). The ALJ did not err in considering this evidence as probative regarding her credibility. *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d. Cir. 1998).

Finally, the ALJ's review of Plaintiff's medical history supports the conclusion of the ALJ regarding Plaintiff's credibility.  The medical evidence during the relevant time period does not support the degree of symptoms and limitations alleged via Plaintiff's subjective complaints of pain.   Although the ALJ acknowledged that

13

Plaintiff had a history of back pain which increased significantly in 2009, her thorough review of all the medical evidence (R. 56-59) supports the conclusion that there is simply nothing in the record that Plaintiff's pain is so severe that it prevents her from performing *any* work at even the lowest exertional levels. Instead, the medical evidence shows that while she was limited at some points pre and post surgeries, these episodes were short in duration and post-operatively Plaintiff was quickly released from care with no evidence of any significant limitations. (R. 58). Additionally, her left lower extremity pain seemed to be caused by neuropathy, and likely linked to her diabetes. Plaintiff has had problems with diabetes since the 1990s, but she was able to work for years despite these problems.[2] Further although she testified that she had to lie down for four to five hours in an eight hour workday due to leg pain, the medical records show that upon physical examination her lower extremities were normal despite any neuropathy. Simply put, nothing in the medical record suggests that she was limited to the degree claimed.

In conclusion, the court finds that the ALJ did not err in discrediting Plaintiff's subjective complaints. Given the record as a whole, substantial evidence supports the ALJ's determination that Plaintiff's allegations of disabling limitations were not

---

[2] Additionally, there is some evidence of noncompliance with her insulin administration due to monetary considerations, but overall, the evidence shows that Plaintiff's blood sugar levels significantly improved following additional diabetic education and changes to her insulin plan. (R. 58).

entirely credible. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(I); 20 C.F.R. §§ 404.1512(a), (c), 404.1529(a); Ellison, 355 F.3d at 1276.

**B.     The ALJ Properly Considered the Doctors's Opinions in Assessing Plaintiff's RFC.**

According to Plaintiff, "[t]he Commissioner's decision should be reversed because the ALJ failed to properly articulate good cause for according less weight to the opinion of Plaintiff's treating physician when finding that the Plaintiff was not disabled." (Doc. # 11 at 8).   To the contrary, the court finds that the ALJ applied proper legal standards when weighting the opinions of Plaintiff's doctors, and her conclusions are supported by substantial evidence.

The weight properly afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon a number of factors, including the source's examining and treating relationship with the claimant, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source.   *See* 20 C.F.R.§ 416.927(d).   The opinion of a physician, even a treating physician, may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion may deserve less weight under the following

circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific contradictions between the physician's opinion and other evidence of record). Nonetheless, if the ALJ has failed to articulate "good cause" for assigning less weight to a treating physicians's opinion, reversible error has occurred. *Lewis*, 125 F.3d at 1440.

Dr. Laura Deichmann has been Plaintiff's primary physician since at least 2006.  Records from Dr. Deichmann indicate treatment for acute illnesses and/or injuries as well as various complaints of musculoskeletal pain and a history of poorly controlled diabetes mellitus with significant non-compliance.  (R. 292-308).  On August 19, 2013, approximately one month before the hearing before the ALJ, Dr. Deichmann completed a medical source form.  (R. 430).  Dr. Deichmann checked the line "yes" to answer to the question "[i]n your professional opinion, do you believe Patricia Owsley is disabled?"  (R. 430).  She also checked the line "yes" to answer the question "do you believe the claimant was disabled on or before December 31, 2010?"  (R. 430).  Specifically, Dr. Deichmann opined that Plaintiff became disabled

16

in 2009. (R. 430). She further opined that Plaintiff had marked restrictions in her daily activities due to uncontrolled diabetes since 2006 and back and hip pain since 2009. (R. 430).

The ALJ appropriately considered Dr. Deichmann's opinion. (R. 55-59). The ALJ gave this opinion little to no weight because it was not consistent with contemporaneous findings and with the objective medical evidence in the record. (R. 59). First and foremost, Dr. Deichmann's opinion is an opinion on an issue reserved for the Commissioner. Whether the claimant is "disabled" and the claimant's RFC "are not medica opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e. that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); *see Adams v. Comm'r Soc. Sec. Admin.*, 586 F. Appx 531, 533-34 (11th Cir. 2014). Opinions on issues reserved to the Commissioner, even when offered by a treating doctor, are not entitled to controlling weight or special significance. *See* SSR 96-5p. Therefore, although Dr. Deichmann's opinion about what Plaintiff can do or her limitations are relevant evidence, her ultimate conclusion that Plaintiff was "disabled" was not entitled to any special weight.

Second, the ALJ properly found that Dr. Deichmann's opinion was not entitled to any weight because it is not supported by the other medical evidence in the record.

17

(R. 59).   As discussed above (and well articulated by the ALJ), after the decompression was performed, Plaintiff underwent minimal and conservative treatment.  Simply put, the medical records of her physical examinations do not show that Plaintiff was unable to perform any work.   And while Plaintiff may be correct in her statement that Plaintiff was under Dr. Deichmann's care in 2009 and 2010 (via notes from other doctors), there are no actual treatment notes in the record from Dr. Deichmann in 2009 or 2010 to support her conclusion that Plaintiff was disabled and unable to work during the relevant time period.

## VI.   Conclusion

For all of these reasons, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the ___29th___ day of April, 2016.

_James H. Hancock_

SENIOR UNITED STATES DISTRICT JUDGE